IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

CASE NO.:

RALPH RAGGO

Plaintiff,

v.

UNIVERSITY OF ROCHESTER
MEDICAL CENTER,

Defendant.

_____/

## COMPLAINT

COMES NOW, the Plaintiff, RALPH RAGGO, by and through his undersigned counsel, and sues the Defendant, UNIVERSITY OF ROCHESTER MEDICAL CENTER, for its causes of action, state the following:

### JURISDICTION AND VENUE

1. This Court has original jurisdiction over the action pursuant to 28 U.S.C. § 1331, 1343, and 1367 for the Plaintiffs claims arising under Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12181 and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. In this action, Plaintiff suffered injuries and now seeks damages.

2. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2) because (a) the Defendant is in this judicial district, and (b) a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred and are occurring within this judicial district.

## PARTIES

3. RALPH RAGGO is a resident of Monroe County, New York who is legally blind and is therefore a qualified individual with a disability under the Rehabilitation Act and the Americans with Disabilities Act and is otherwise *sui juris*.

4. Defendant, UNIVERSITY OF ROCHESTER MEDICAL CENTER (hereinafter "URMC") leases and operates STRONG MEMORIAL HOSPITAL (hereinafter "STRONG"), a hospital located at 601 Elmwood Avenue, Rochester, NY 14642

5. URMC is a recipient of federal financial assistance, and is therefore subject to the requirements of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

## FACTS

6. At all times material, RALPH RAGGO is a man who is legally blind and can only read documents in 18 point font or larger.

7. On December 16, 2011, RALPH RAGGO was rushed to the STRONG Emergency Department. He was diagnosed with a broken hip and was scheduled for emergency surgery that night.

8. RALPH RAGGO and his wife repeatedly told STRONG emergency staff that he was legally blind and needed documents in large print, specifically 18 point font.

9. STRONG emergency staff never provided RALPH RAGGO with documents in large print.

10. RALPH RAGGO was forced to sign the consent for surgery even though he could not read it because STRONG emergency staff told him that his surgery was an emergency and there was not enough time to print a document in 18 point font.

11. No large print documents were provided in the STRONG emergency department. As such, the emergency medical staff of STRONG performed surgery and other procedures without allowing Mr. RAGGO to read forms concerning the procedures and give full informed consent.

12. The doctors, nurses, and all other employees or medical staff of STRONG who interacted with Mr. RAGGO had actual knowledge of the visual disabilities of the Mr. RAGGO, yet did not provide him with information about the risks of his procedures or the details of his care in a format that is accessible to him.

13. Further, STRONG was aware of its obligation to provide information in an accessible format for patients who have vision disabilities.

14. Inaccessible pre-procedure consent forms were signed by RALPH RAGGO. As such, RALPH RAGGO did not fully understand what was happening to him or what treatment he was receiving at STRONG. RALPH RAGGO could not read about the details of the procedure, the risks of the procedures, the options he would have, what recovery would entail or any other information that any other non-vision impaired person would be able to read and learn about prior to surgery.

15. Notwithstanding Mr. RAGGO's serious and painful condition, STRONG failed to provide their patient with large print, accessible information, but instead told him there was not enough time to print consent forms in a larger font.

16. Accordingly, Defendant discriminated against RAGGO in the equal use of their facilities and as a result, he experienced mental anguish and humiliation in violation of his civil rights. Further, defendant failed to provide services to RAGGO as they would have provided a similarly situated patient without a vision disability.

17. RALPH RAGGO was placed under local anesthesia and underwent hip surgery at STRONG.

18. Following the procedure, RALPH RAGGO was admitted to STRONG and was treated as an inpatient until December 21, 2011.

19. While admitted to STRONG, Mr. RAGGO told every person that he interacted with that he was legally blind and needed documents in 18 point font as a reasonable modification.

20. While admitted to STRONG, Mr. RAGGO could not read the patient menu and because of this he could not place his order correctly.

21. Mr. RAGGO asked for assistance with the menu, but none of the nurses or other staff at STRONG assisted him. As a result, Mr. RAGGO did not receive lunch the first day he was recovering at STRONG.

22. When all the others were served food, Mr. RAGGO was not served anything. Mr. RAGGO asked a staff member if he could get a tuna sandwich and the staff brought it to him. For the rest of his stay at STRONG, Mr. RAGGO only ate tuna sandwiches because it was the only thing he knew was available since he could not read the menu and no one would assist him with the menu.

23. When Mr. Raggo was discharged from STRONG hospital he requested discharge instructions in 18 point font. The staff at STRONG did not provide the discharge instructions in 18 point font. Mr. RAGGO was forced to sign discharge instructions that he could not read and later learned that the instructions were inaccurate. Mr. RAGGO would not have signed the inaccurate instructions if he had been able to read them.

24. STRONG physicians, nurses, medical staff, and other staff who participated in the care and treatment of RALPH RAGGO knew that he was legally blind. They knew that he continuously requested modifications so he could see and read important medical documents and other hospital documents and receive the same level of information and patient care that patients without visual disabilities receive.

25. STRONG is fully aware of its responsibilities under the Americans with Disabilities Act and the Rehabilitation Act, and is fully aware that the failure to provide effective communications and reasonable modifications to individuals with vision disabilities would lead to the failure to obtaining knowing and informed consent for any procedure.

26. Due to the failure to provide any information in 18 point font or any other reasonable modifications, STRONG and their agents and employees never gave RALPH RAGGO complete information such as: the required treatment; the purpose of the procedures to be provided; the common risks, benefits, and side effects thereof; the specific dosage range for any medication, when applicable; alternative treatment modalities; the approximate length of care; the potential effects of stopping treatment;

how treatment will be monitored; and that any consent given for treatment may be revoked.

27. RALPH RAGGO has anemia, Barrett's disease, arthritis, glaucoma, and cataracts, which require continued treatment. Mr. RAGGO is treated by physicians at URMC including Dr. Vivek Kaul, Dr. Stephen Laurie, Dr. Brian Giordano, Dr. John Gorczyca, and Dr. Shakeel Shareef.

28. RALPH RAGGO has returned and will continue to return to URMC for treatment.

29. Mr. RAGGO continues to request documents in 18 point font from staff at URMC and continues to be denied this modification.

30. On March 30, 2012, Mr. RAGGO had an appointment with Dr. Shareef at URMC. Mr. RAGGO requested forms in large print and was told by a receptionist that large print forms could not be provided, including a consent form.

31. On May 9, 2012, Mr. RAGGO had an appointment with Dr. Giordano at URMC. Mr. RAGGO requested forms in large print and was told by Tonya, a receptionist, that large print forms could not be provided, including an outpatient agreement form.

32. On May 15, 2012, Mr. RAGGO returned to Dr. Giordano's office and was told again that large print forms could not be provided, including medication sheets.

33. On May 25, 2012, Mr. RAGGO returned to Dr. Giordano's office and was told by Tyler Hopkins that large print forms could not be provided, including an information form.

34. On September 28, 2012, Mr. RAGGO had an appointment with Dr. Shareef at URMC. Mr. RAGGO requested forms in large print and was told by Kelly, a

receptionist, that large print forms could not be provided, including medication sheets.

35. On January 7, 2013, Mr. RAGGO had an appointment with Dr. Gorczyca at URMC. Mr. RAGGO requested forms in large print. The receptionist attempted to print the forms in large print but was not able to go beyond 12 point font, including medication sheets and an outpatient agreement form.

36. Between June 15, 2013 and July 25, 2013, Mr. RAGGO called Dr. Kaul's office at URMC to request documents in 18 point font multiple times. As of September 10, 2013, Mr. RAGGO still has not received this material.

37. On July 30, 2013, Mr. RAGGO had an appointment at STRONG. Mr. RAGGO did not know where he needed to go so he asked for a map at the information desk. The information desk provided him with a map that he could not read. Mr. RAGGO asked for a large print map but the person at the information desk did not have any and directed Mr. RAGGO to the hospital copy shop. Mr. RAGGO went to the copy shop by stopping strangers to ask for assistance. The copy shop also did not have large print maps. Mr. RAGGO found the location of his appointment by stopping strangers to ask for directions.

38. On September 26, 2013 Mr. RAGGO went to STRONG to undergo a colonoscopy. When Mr. RAGGO arrived he was asked to sign consent forms. Mr. RAGGO could not read the forms and requested the forms in large print. The receptionist took the forms away from Mr. RAGGO and told him to sit down. Mr. RAGGO was never provided with large print consent forms.

39. Prior to the September 26, 2013 procedure Mr. RAGGO was given forms to complete. Mr. RAGGO could not complete the forms because they were not in large print. Mr. RAGGO never received the forms in large print.

40. On September 26, 2013, right before the colonoscopy Dr. Kaul informed Mr. RAGGO that the procedure required Mr. RAGGO to be turned onto his left side and have his knee bent toward his stomach. Mr. RAGGO informed Dr. Kaul that because of his prior hip surgery he was unable to lay on his hip. Dr. Kaul stated that he was not aware of the prior hip surgery and had he known in advance he would have made modifications to the procedure.

41. If Mr. RAGGO had received the forms to be completed in advance of the procedure in large print Mr. RAGGO would have been able to provide the information about his prior hip surgery to Dr. Kaul.

42. STRONG's failure to provide the forms in large print prevented Mr. RAGGO from providing important information to Dr. Kaul about the procedure.

43. Mr. RAGGO has continuously called multiple offices at STRONG to request large print medical forms and results from medical tests.

44. The discrimination against RALPH RAGGO is intentional, with reckless disregard, and with deliberate indifference to his protected rights.

45. On January 20, 2012, Mr. RAGGO filed a complaint with the U.S. Department of Justice and the U.S. Department of Health and Human Services, Office of Civil Rights.

46. On March 1, 2012, Mr. RAGGO agreed to participate in the Department of Justice's mediation program.

47. On October 11, 2012, the mediation program was closed without resolution.

48. Plaintiff has retained the services of the Olinsky Law Group and Disability Independence Group, Inc., and has agreed to pay them reasonable fees for their services.

## COUNT I
## VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973

49. Plaintiff realleges and incorporates herein the allegations set forth in Paragraphs 1 through 48 above.

50. RALPH RAGGO is legally blind and his disability substantially limits major life activities, including his ability to see. Therefore, Plaintiff is considered to be an individual with a disability under Section 504 of the Rehabilitation Act, as amended. See 29 U.S.C. §705(9). Plaintiff is otherwise qualified under Section 504 of the Rehabilitation Act because he meets the essential eligibility requirements for Defendant's services at all time material hereto.

51. STRONG is a recipient of federal financial assistance by virtue of receipt of Medicare and Medicaid payments, as well as other federal financial assistance.

52. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, requires that no qualified individual with a disability, on the basis of that disability, be excluded from participation in or be denied the benefit of the services, programs, activities, or to otherwise be discriminated against.

53. Defendants policies, practices and procedures, particularly the actions and omissions described above, violated the Plaintiff's rights under Section 504 of the Rehabilitation Act by discriminating on the basis of a disability.

54. Additionally, the Defendant also denied Plaintiff services that it made available to non-disabled patients.

55. STRONG has discriminated against Plaintiff by failing to provide reasonable modifications necessary to ensure effective communication with and equal access for individuals who have vision disabilities, in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

56. Defendant violated Plaintiff's rights by providing unequal treatment through their repeated refusal to ensure effective communication and equal access for RALPH RAGGO by refusing to make reasonable modifications for him, including refusing to provide written materials in 18 point font.

57. Defendants knew that RALPH RAGGO would be harmed by their failure to provide reasonable modifications to Mr. RAGGO.

58. STRONG's actions were intentional, with reckless disregard, and with deliberate indifference to the rights and needs of the Plaintiff herein.

59. As a result of STRONG's actions, RALPH RAGGO has been damaged and has suffered injuries and experienced emotional suffering, pain and anguish.

**WHEREFORE**, Plaintiff respectfully prays that this Court grant the following relief against the Defendants, including entering a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that the Defendant's practices, policies

and procedures have subjected Plaintiff to discrimination in violation of Section 504 of the Rehabilitation Act permanently enjoining the Defendant from any practice, policy and/or procedure which will deny Plaintiff equal access to, and benefit from the Defendant's services. This includes entering a permanent injunction ordering the Defendant:

   a. To cease discrimination against Plaintiff and other patients with vision disabilities;

   b. To promulgate and comply with policies and procedures to ensure that the Defendant and their staff do not discriminate against individuals with vision disabilities;

   c. To promulgate and comply with procedures to ensure that the Defendant will provide and pay for reasonable modifications when needed by individuals who have vision disabilities in all services offered by the Defendant;

   d. To promulgate and comply with procedures to ensure that the Defendant will notify individuals who are legally blind or have other vision disabilities of their right to reasonable modifications.

   e. Award compensatory damages

   f. Award reasonable costs and attorneys' fees; and

   g. Award any and all other relief that may be necessary and appropriate.

## COUNT II
## VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT

60. Plaintiff realleges and incorporates by reference the allegations of facts in paragraph 1 through 48.

61. Plaintiff RALPH RAGGO was hospitalized at STRONG from December 16, 2011 to December 21, 2011.

62. RALPH RAGGO is legally blind and his disability substantially limits major life activities, including his ability to see. Therefore, Plaintiff RALPH RAGGO is an individual with a disability under Title III of the Americans with Disabilities Act. Plaintiff meets the essential eligibility requirements for Defendant's services at all times material hereto.

63. Despite their actual knowledge of RALPH RAGGO's disability and his need for reasonable modifications to understand his care and treatment, Defendant STRONG took no steps to ensure that Mr. RAGGO received reasonable modifications.

64. STRONG denied RALPH RAGGO treatment and services that would usually be rendered to similarly situated patients without vision disabilities.

65. Defendant violated Title III of the Americans with Disabilities Act in numerous ways, including discriminatory actions which occurred when they:

    a. Failed to maintain policies and procedures to ensure compliance with Title III of the Americans with Disabilities Act, specifically policies that provide equal access to individuals with disabilities;

    b. Failed to ensure that communications with Plaintiff were as effective as communications with non-disabled patients;

    c. Failed to provide reasonable modifications, including written documents in 18 point font, and to modify policies and procedures to prevent discrimination against Plaintiff;

    d. Failed to establish effective self-evaluations and/or provide notice of Plaintiff's rights as an individual with a disability under the Americans with Disabilities Act;

    e. Excluded Plaintiff from services of the public entity and denied Plaintiff the benefit of these services due to his disability.

66. STRONG had knowledge of their obligations under the Americans with Disabilities Act and were deliberately indifferent to the rights of RALPH RAGGO.

67. STRONG knew that RALPH RAGGO would be harmed by their failure to provide reasonable modifications to RALPH RAGGO.

68. Plaintiff suffered actual damages, non-economic damages, and continues to suffer emotional distress and damages due to Defendant STRONG's violations of Title III of the Americans with Disabilities Act.

    **WHEREFORE,** Plaintiff respectfully prays that this Court grants the following relief against the Defendant, including entering a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendant's practices, policies and procedures have subjected Plaintiff to discrimination in violation of Title III of the Americans with Disabilities Act permanently enjoining the Defendant from any practice, policy and/or procedure which will deny Plaintiff equal access to, and benefit from Defendant's services. This includes entering a permanent injunction ordering the Defendant:

    a. To cease discrimination against Plaintiff and other individuals with vision disabilities;

b. To promulgate and comply with policies and procedures to ensure that the Defendant and its staff do not discriminate against individuals with vision disabilities;

c. To promulgate and comply with procedures to ensure that the Defendant will provide and pay for reasonable modifications when needed by individuals who have vision disabilities in all services offered by the Defendant;

d. To promulgate and comply with procedures to ensure that the Defendant will notify individuals with vision disabilities of their right to reasonable modifications. Award reasonable costs and attorneys' fees; and

e. Award any and all other relief that may be necessary and appropriate.

Dated this 3rd day of March, 2014.

Respectfully submitted,

_____
Howard D. Olinsky, Esq.
Olinsky Law Group
300 South State Street
Suite 420
Syracuse, NY 13202
Phone 315-701-5780
E-Mail: holinsky@windisability.com